ELISHA J. CAMPBELL *vs.* GEORGE E. CAMPBELL, *et al.*

FEBRUARY 26, 1913.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, and Vincent, JJ.

*(1)  Bills and Notes.   Insane Persons.*

Upon the question of the validity of a note filed against an estate of a decedent, request to charge that if decedent was insane at the time he gave the note, yet if the jury should believe that claimant when he received the note did

not know or have sufficient reason to know that decedent was then insane, then inasmuch as claimant could not be tendered back such consideration as he furnished for the note he was entitled to recover the amount of the note:—

*Held,* properly refused.

*(2)   Probate Law.   Filing Claims Against Estate.*

Where claimant files in the probate court a claim against an estate "1902, April 1st.   To amount of negotiable promissory note made by James Campbell, April 1, 1902, for ten thousand dollars, payable on demand to Elisha J. Campbell or order, $10,000," while this statement precludes the claimant from recovering more than $10,000 upon that item, yet if the evidence of the claim by means of the note turns out to be insufficient by reason of the invalidity of the note due to the insanity of the maker, claimant is not thereby precluded from offering other evidence of such claim to an amount of $10,000 for good and valuable considerations running from him to decedent.   To allow claimant to thus recover, is not to allow recovery upon a different *claim,* from that filed in the probate court.

PROBATE APPEAL.   Heard on exceptions of appellant and sustained.

PARKHURST, J.   For the nature and previous travel of this case, which is an appeal from an award of commissioners upon the insolvent estate of James Campbell, reference may be had to the opinion of this court in the same matter, reported in 30 R. I. 63.   Upon the new trial had pursuant to the order therefor as set forth in that opinion, the case was again tried, and resulted in a verdict of the jury in the following terms:   "The jury find that the claim of the appellant, Elisha J. Campbell, against the estate of James Campbell for $15,550.00, for 'note, money and service,' which said claim was allowed by the commissioners on said estate for the sum of $2,700.00, should be disallowed, and that there is nothing due to Elisha J. Campbell from said estate by reason of said claim, and that the sum of $2,700.00 should be deducted from the claim of said appellant as allowed by said commissioners."

The claim filed by the appellant in the municipal court of the city of Providence, the court of probate for said city, is as follows:

"PROVIDENCE, R. I., March 4, 1905.

"Estate of JAMES CAMPBELL

    " To ELISHA J. CAMPBELL,            DR.

"1902.  April 1st.  To amount of negotiable promissory note made by James Campbell, April 1, 1902, for ten thousand dollars, payable on demand to Elisha J. Campbell, or order...................... $10,000

"1904.  June 28.  To services two years and three months to date at $150 per month.... 4,050

"1904.  June 28.  To moneys paid on your account........................... 1,500

    "Total.................................. $15,550"

It is upon this claim of the appellant that the proceedings are based. The appellees defended against said claim upon the grounds that there was no consideration for the note and that the appellant rendered no such services as claimed under the second item and never paid any moneys as set forth in the third item. The appellees further set up that, at the time when the $10,000 note was signed and delivered to the appellant, James Campbell was insane and incapable of transacting business, and that therefore the note was void, and no recovery could be had thereon. Thus it appears that there was a double defense set up as to the claim upon the $10,000 note, first, that the same was given without consideration, and second, that it was void by reason of the insanity of James Campbell. A vast amount of testimony appears in the transcript introduced on behalf of the appellant in the endeavor to show that said note was given to him by his father, partly in consideration of work and labor in his father's service, extending over a period of years, for which he was entitled to a salary which was not paid, and partly in consideration of moneys loaned and advanced by the appellant to his father, all prior to the date of the note; and the appellees introduced testimony to contradict this. Also

there was a vast amount of testimony introduced in the endeavor to show on the one hand that said James Campbell was insane when the note was signed and delivered, and on the other hand, to show that at that time he was of sound mind and capable of giving a valid note.

During the progress of the trial the appellant took exceptions to the number of twenty-one, relating to exclusion and admission of testimony and to the refusal of certain requests for instructions to the jury, and duly prosecuted his bill of exceptions to this court, and the case is now before this court upon his bill of exceptions.

(1)      At the argument before this court, the appellant waived all of his exceptions except those which are numbered 19, 20 and 21.   The 19th exception was to the refusal of the trial judge to charge, at appellant's request, as follows:   (noted on p. 1764 of the transcript):   "Even if the jury believe that James Campbell was insane at the time he gave the note in evidence in this case to Elisha J. Campbell, yet if the jury also believe that Elisha J. Campbell, at the time he received the note, did not know, or have sufficient reason to know, that his father was then insane, then inasmuch as Elisha J. Campbell cannot now be tendered back such consideration as he furnished for the note, he is entitled to recover in this action at least the amount of that note, and interest thereon to the date of the death of James Campbell."

Exception 19 must be overruled.   It presumes the fact that James Campbell was insane at the time he gave the note.   It cannot then be said that the note, as such, became a a valid obligation upon which recovery could be had, simply because the payee of the note did not know or have sufficient reason to know of such insanity.   That would be a most dangerous rule as to recovery in such cases; it would permit the payee to show that he was ignorant, and entitled to recover in a case where everyone else knew the fact of insanity and where the proof of the fact was overwhelming. Such a ruling was refused in the trial court in the case of *Seaver* v. *Phelps*, 11 Pick. 304, and the refusal was sustained

by the Supreme Judicial Court, on exception, the opinion stating the principle as follows:

Wilde, J.  "The general doctrine that the contracts, and other acts in *pais*, of idiots and insane persons, are not binding in law or equity, is not denied."

. . .  "These principles are not controverted by the defendant's counsel; but they maintain, that if the plaintiff was of unsound mind and incapable of understanding, at the time he pledged the note to the defendant, yet if the defendant was not apprized of that fact, or had no reason to suspect it from the plaintiff's conduct, or from any other source, and did not overreach him, or practice any fraud or unfairness, then that the contract of bailment was valid and binding and could not be avoided in the present action.  And they requested the court of common pleas so to instruct the jury.  That court, however, were of opinion that the law was otherwise, and we all concur in the same opinion.  If it had been only proved that the plaintiff was a person of weak understanding, the instructions requested would have been appropriate and proper.  For every man after arriving at full age, whether wise or unwise, if he be *compos mentis*, has the capacity and power of contracting and disposing of his property, and his contracts and conveyances will be valid and binding, provided no undue advantage be taken of his imbecility.

"It is sometimes difficult to determine what constitutes insanity, and to distinguish between that and great weakness of understanding.  The boundary between them may be very narrow, and in fact often is, although the legal consequences and provisions attached to the one and the other, respectively, are widely different.

"In the present case, however, this point is settled by the verdict, and no question is made respecting it.  We are to consider the plaintiff as in a state of insanity at the time he pledged his note to the defendant; and this being admitted, we think it cannot avail him as a legal defence, to show that he was ignorant of the fact, and practiced no imposition.

The fairness of the defendant's conduct cannot supply the plaintiff's want of capacity."

Exception 20 (noted on p. 1765 of transcript) was to a refusal to charge the jury, at appellant's request, as follows: "Even if the jury should find from the evidence that James Campbell was insane at the time he gave Elisha J. Campbell the note for ten thousand dollars ($10,000.00), which is in evidence in this case, and should find that said note is invalid, nevertheless, if the jury should also find that Elisha J. Campbell, prior to the time when he received said note, had either performed services for, or had loaned money to, James Campbell, or had both performed such services for, and loaned such money to James Campbell, which services or (2) loans, or both, were understood by Elisha J. Campbell to be the consideration of said note, then Elisha J. Campbell is entitled to recover in this action the reasonable value of such services, and the amount of such loan or loans for which he had not been paid up to April 1, 1902, with interest to the date of the death of James Campbell."

The trial judge refused to charge as above requested, upon the theory set forth in other parts of his charge, that inasmuch as the appellant made his claim before the probate court upon a promissory note, he could not, if the jury found that James Campbell was insane at the time of the making and delivery of the note, be allowed to recover upon the original consideration of the note, even if he satisfied the jury that he had rendered services and loaned money as he claimed as a consideration therefor, because that would be equivalent to allowing him to recover upon a different claim from the one presented to the probate court. This is shown by reference to the language of the trial judge, as follows (pp. 1754–1755 of transcript): "And I charge you, gentlemen, that if you find from a fair preponderance of the testimony that this note was made and issued by James Campbell, and if you find that there was a good and valid consideration for this note, but if you find that his mind was such at the time he made this note that he did not understand the nature

and effect of his act, then, gentlemen, you must find for the estate of James Campbell on that point;" and again (quoting from the charge on page 1758), after reciting the claim as filed in the probate court by the appellant, the court said: "That is, that was the claim he presented against his father's estate. The consideration of that note, as he claims, was back salary and money loaned. He made no claim to the probate court for back salary or for money loaned for any period of time prior to April 1st, 1902; he merely made a claim for this promissory note. So it follows, gentlemen, therefore, that inasmuch as the statute provides that no claims other than those presented as aforesaid can be enforced against the estate, that if you find that this promissory note was issued to Elisha J. Campbell, and there was a good and valuable consideration for the giving of that note, and if you find that James Campbell did not understand the nature and effect of the act he was performing when he gave the note, this appellant cannot recover for any services performed for his father, or any money loaned to his father prior to April 1st, 1902, unless he can recover on this promissory note, because, as I say, he never preferred to the probate court any claim for any services or money loaned prior to that time."

We think the rule laid down by the trial judge as above quoted was too stringent and was not in accord with the more liberal rules adopted by this court in at least two recent cases. While it is true that it was held in the case of *Anderson* v. *Williams*, 26 R. I. 64, that a creditor who files his claim in the probate court under the statute is bound by such claim in any subsequent action against the estate, both as to the amount of and the period covered by the claim, and also as to the nature of the claim, yet it is to be noted that in that case the cause of action set forth in the first count of the declaration was totally and entirely distinct and different from anything set forth in the claim, and based upon a different consideration; while the cause of action set forth in the second count was for a greater amount and for a longer period than that set forth in the claim as presented.

The essence of the decision is that the plaintiff could not recover upon the first count at all, and could not recover upon the second count for services in excess of her claims. as presented. The court foreshadows the liberal policy since followed in the cases hereafter cited in the following language (p. 66)— "While we should hesitate to apply the bar of the statute to a claim which had been substantially made, though lacking in technical exactness of statement, or to a claim which omitted to state unliquidated damages, yet we can not concede the right of a creditor who has stated a claim for a definite sum of money, for services rendered in a. definite period of time, to sue for other services rendered outside of that period or for an amount of money greater than that originally claimed."

In the case of *Ralph* v. *Taylor*, 33 R. I. 503, where suit was brought by a person under guardianship to recover for services rendered to the defendant's intestate during her lifetime, it was at first attempted to recover upon an express contract alleged to have been made between the plaintiff (then under guardianship) and the defendant's intestate during her lifetime, and to show that there was an express agreement between the parties that the plaintiff should be compensated at the rate of $8 per month; and evidence to that effect was offered and the jury so found. But upon exceptions before this court it was determined that the plaintiff, being under guardianship, was, under our statute incapable of making an express contract; but it was also determined that he was entitled to prove what services he had rendered and the value of them, under a common count in *indebitatus assumpsit* for a *quantum meruit*. The claim, as filed in the probate court, was as follows: "To fourteen

years and eight months labor at $8 per month ...   $1,408 00
By credit, payment on account . . . . . . . . . . . . . .       120 95
                                                          —————————
Balance due. . . . . . . . . . . . . . . . . . . . . . . . . .   $1,287 05;

and as to this claim we held as follows: "There is no suggestion in this statement of claim whether it is based upon an express contract or not, and nothing which is inconsistent with the maintenance of the suit upon the second count of the declaration, being, as above shown, a common count in *indebitatus assumpsit,* for a *quantum meruit.* It is merely the statement of a claim, which does not conclude the nature of the evidence upon which it may be maintained." The principle underlying this case is analogous to that in the case at bar, in that, while it appears that an attempt to recover as upon an express contract cannot succeed because of the legal incapacity of one of the parties to make an express contract, yet a recovery may be had upon showing the value of what was actually done, which would have been the consideration of such an express contract had not such incapacity existed.

And see, also, *White* v. *Almy,* 34 R. I. 29, 35, as to the effect of claims as filed in the probate court.

In the case at bar, as we have already shown, the appellees contested the appellant's claim upon the $10,000 note, both on the ground of want of consideration, and also on the ground of the invalidity of the note by reason of the insanity of James Campbell at the time it was made and delivered. The appellant was thereby compelled to offer proof of a valid and adequate consideration for the note and a large part of the transcript is taken up in the direct examination and cross-examination of the appellant and other witnesses on that point. Of course the *prima facie* evidence of the appellant's claim for this sum of $10,000 was the note itself which was presented by him in support of his claim. But the note itself is only evidence of the claim; the foundation of the note and of the claim thereon was the services rendered and money paid by the appellant; and where the consideration of the note is disputed and evidence of consideration is offered at great length, it would be technical in the extreme to say that nothing could be recovered, even though the underlying consideration was fully proved to the satisfaction of the jury, simply because, after

the time when all the services had been rendered and the money advanced, the maker of the note became insane and was insane at the time when the note was made. It is to be noted also that, on the question of the insanity of James Campbell at the time when the note was given, the record contains upwards of 900 pages, or more than one-half of the entire transcript, devoted to the conflicting testimony of witnesses on that subject. In view of such a difference of opinion, it would be highly unjust to hold in substance that the appellant, by taking a note from a man who was deemed by so many disinterested witnesses to be quite sane and capable of transacting business and giving a note, having been accustomed to give notes during a long and active business life, should be cut off from all recovery, when he would have been entitled to have recovered if he had not taken the note. It is to be noted that the claim, as filed in the probate court, to wit: "1902, April 1st. To amount of negotiable promissory note made by James Campbell April 1, 1902, for ten thousand dollars payable on demand to Elisha J. Campbell or order, $10,000," states a claim for the sum of $10,000, evidenced by a promissory note. It appears also in the statement of this case in 30 R. I. 63, on p. 64, that this court in speaking of the appellant's claim says: "This claim was made up as follows: $10,000 due on a promissory note given for work and labor, and money loaned by the plaintiff to his father." It does not appear to have occurred to anybody that this was not a correct and substantial statement of the appellant's claim, in view of the evidence before the court. The claim as stated in the probate court is for "amount" of $10,000; such a statement precludes the appellant from recovering more than $10,000 upon that item of his claim; but if the evidence of it by means of a promissory note turns out to be insufficient by reason of the invalidity of the note due to the insanity of the maker, the appellant is not thereby precluded from offering other evidence of such claim to an amount of $10,000 for good and valuable considerations running from him to his father.

(See *Ralph* v. *Taylor, supra.*) To have allowed the appellant to recover in accordance with the instruction which is above quoted and which was refused and is the subject of the exception now under discussion would not have been to allow recovery upon a different *claim* from that filed in the probate court, but only upon the same claim, evidence in support of which had been given before the jury at great length and without objection.

We are of the opinion that the trial judge erred in refusing to instruct the jury as requested, and exception 20 is therefore sustained.

As to exception 21, to the denial of the appellant's motion for a new trial, it becomes unnecessary to consider it, because, as shown above, the jury was not properly instructed in the particulars above set forth and was not allowed to consider certain very important evidence for technical reasons which we have disapproved; and it would be unprofitable to consider the weight of the evidence until it shall appear that a jury has been allowed to consider all of the evidence under proper instructions.

The appellant's exceptions numbered 19 and 21 are overruled, the 20th exception is sustained, and the case is remitted to the Superior Court for a new trial.

*James A. Williams,* for appellant.

*Irving Champlin, James Harris, John S. Murdock,* for appellees.